**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| TONAL SYSTEMS, INC.,<br>Plaintiff,<br>v.<br>SHENZHEN SPEEDIANCE LIVING TECHNOLOGY CO., LTD.,<br>Defendant. | Civil Action No. __________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Tonal Systems, Inc. ("Tonal"), for its Complaint against Defendant Shenzhen Speediance Living Technology Co., Ltd. ("Speediance"), alleges as follows:

## NATURE OF THIS ACTION

1. This is an action for infringement of U.S. Patent Nos. 10,661,112 ("the '112 Patent," attached hereto as Exhibit 1), 8,287,434 ("the '434 Patent," attached hereto as Exhibit 2), 10,960,258 ("the '258 Patent," attached hereto as Exhibit 3), 11,554,287 ("the '287 Patent," attached hereto as Exhibit 4), 11,389,687 ("the '687 Patent," attached hereto as Exhibit 5), and 9,101,791 ("the '791 Patent," attached hereto as Exhibit 6) (collectively, "the Asserted Patents"). Speediance's Gym Monster infringes the Asserted Patents and Speediance actively induces its customers to infringe the Asserted Patents by using Speediance's Gym Monster.

2. This is also an action for false and misleading advertising under Section 43 of the Lanham Act, 15 U.S.C § 1125 for Speediance's advertisement of its infringing Gym Monster product. Upon information and belief, Speediance has been altering and/or deleting reviews on its website that are not 5-stars, and has been duplicating reviews under different

usernames to increase its positive image. Speediance has also been falsifying its Amazon reviews of the Gym Monster.

3. Tonal previously filed an action against Speediance in *Tonal Systems, Inc. v. Shenzhen Speediance Living Technology Co., Ltd.*, No. 2:23-cv-00517-JRG-RSP (E.D. Tex. 2023), asserting the same claims, but dismissed that action after Speediance avoided service of the complaint.

## THE PARTIES

4. Tonal is a corporation organized and existing under the laws of Delaware, with a principal place of business at 69 Converse Street, San Francisco, CA 94301.

5. Tonal is the creator and manufacturer of a groundbreaking digital strength training system that pairs a revolutionary electromagnetic resistance engine with personalized and engaging video content in a sleek, compact, space-saving design. In recognition of its pioneering work, Tonal has been awarded numerous patents, including the Asserted Patents, which protect its award-winning and innovative technology. Tonal is the sole owner of the Asserted Patents.

6. On information and belief, Speediance is an entity organized and existing under the laws of China with its principal place of business located at 19th Floor, Gemdale Viseen Tower A, No.16, Gaoxin 10th South Road, Shenzhen, Guangdong Province, China. Speediance is the seller and manufacturer of the Speediance Gym Monster.

## JURISDICTION AND VENUE

7. This civil action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, and under the Lanham Act § 43, 15 U.S.C. § 1125(a). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

8. This Court has personal jurisdiction over Speediance, and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(c), because upon information and belief, Speediance is foreign corporation, and has established minimum contacts with this forum such that the exercise of jurisdiction over Speediance would not offend traditional notions of fair play and substantial justice, including via Speediance's sale and shipping its infringing product to Texas, individually and/or through Speediance's affiliates, and Speediance's purposefully targeting customers for its infringing product in Texas.

## BACKGROUND

### A. Tonal's Groundbreaking Patented Technologies

9. Founded in 2015, Tonal is the creator of a pioneering smart home gym that leverages digital weight provided by an electromagnetic motor that is monitored and controlled by Tonal's artificial intelligence and motion sensor technology. Tonal's smart home gym allows users to complete an effective, safe, and well-rounded cable strength training routine from the convenience of their home.

10. Tonal's founder, Aly Orady, came up with the idea for Tonal's revolutionary digital weight technology while at a gym, where he was working out on a huge cable exercise machine. He wished he could do the same workout at home and realized that he could replace the gym exercise equipment's reliance on gravity and big metal plates with electromagnetic resistance and an intelligent control system. Orady went to work brainstorming and then prototyping what would eventually become—after years of effort—Tonal's smart home gym.

11. Tonal's groundbreaking product combines a number of key features: (1) a sophisticated digital motor that simulates and improves upon physical weights; (2) a sleek, attractive, compact design that minimizes the space required in users' homes; (3) a

touchscreen display with an extensive library of engaging, personalized, interactive video workouts; (4) intelligent and adaptive safety features that sense when a user is struggling or performing an exercise incorrectly; and (5) a variety of functional accessories that can be safely interchanged to maximize the number and types of workouts that can be performed.

12. The first of its kind, Tonal's home gym has garnered industry accolades and a devoted fanbase, including well-known athletes such as Lebron James and Serena Williams. Tonal has been recognized with numerous awards for its superior performance, design, and innovation, including by Men's Health in its Fitness and Home Gym Awards, by Fast Company for its Innovation by Design Awards, by the Industrial Designers Society of America for its International Design Excellent Awards, and by The Edison Awards. In 2019, the Core 77 Design Awards recognized Tonal as the "World's First Digital Weights Home Gym." Tonal 2 has similarly garnered positive coverage and high praise from major media and fitness outlets, including *GQ* for its adaptive resistance technology and its innovative, sleek design, and *PCMag* for awarding it Best Digital Weight Machine.



13. Tonal has invested a significant amount of time and money in research and development to invent, design, and develop its innovative digital strength training technology.

The Asserted Patents describe and claim inventions related to this technology, which are embodied in Tonal's groundbreaking home gym.

14. The '434 and '791 Patents, for example, relate to Tonal's innovative interactive video content. Using the Tonal home gym, users can participate in live or on-demand video exercise programs. Tonal recommends weight specific to each movement in the program based on a "strength assessment" of the user, which includes an analysis of the user's force data for each movement and other characteristics of the user. Tonal automatically sets the resistance for each exercise to the suggested weight and adjusts the resistance during the exercise program based on the user's performance.



15. The ’112 and ’687 Patents relate to Tonal’s dynamic weight modes.[1] Using its proprietary compact digital motor, the Tonal home gym improves upon physical weights by adjusting resistance at specific points in an exercise. In “Chains” mode, for example, more weight is added at the top of the user’s range of motion. In “Eccentric mode,” more weight is added during the eccentric phase of the user’s movement. These dynamic weight modes make every repetition more effective and precise, and support training methods that are difficult or impossible to replicate with other forms of resistance.




16. Tonal’s dynamic weight modes also make workouts safer for its users. Tonal’s “Spotter” and “Burnout” modes, for example, reduce resistance if a user is struggling or fatigued so that the user can complete a repetition or set without injury.

---

[1] https://knowledge.tonal.com/s/article/Intelligence-Dynamic-Weight-Modes

17. The ’258 and ’287 Patents relate to Tonal’s proprietary handle connector. The handle’s unique, innovative design includes a biasing mechanism and key that permits users to safely apply significant force to the handles while at the same time making it easy for users to disconnect the handles and connect other accessories.





18. This allows users to connect many different handles and accessories, providing for a practically unlimited array of different exercises.

**B. Speediance’s Infringing Gym Monster Product**

19. Speediance is the seller and manufacturer of a digital strength training machine called the Speediance Gym Monster (“the Infringing Product”).

20. Speediance was founded in Shenzhen, China in 2020.

21. Speediance directly targets current and prospective Tonal customers, advertising itself as the “Tonal killer” and emphasizing the Infringing Product’s purportedly similar features, including its digital weight system, electric motor, adaptive weight modes,

interactive content, smart accessories, and safety features.[2] On information and belief, Speediance copied these features directly from Tonal's home gym, using Tonal's patented technology.



22. For example, like the Tonal home gym (on the right side below), the Infringing Product (on the left side below) includes a tablet that allows a user to participate in interactive video exercise programs that provide suggested weights to users based on a strength assessment and the user's characteristics.

**Find Your Limit.**
**Then Go Beyond.**

Cutting-edge strength assessment technology from Speediance provides accurate recommendations for warm-up routines, training programs, and optimal weight levels for all major muscle groups—including shoulders, chest, back, glutes, and legs.

[2] https://www.speediance.com/pages/speediance-reviews?spm=..page_1843253.header_1.1&spm_prev=..index.header_1.1







23. Also like the Tonal home gym (on the right side below), the Infringing Product (on the left side below) employs a compact digital motor that adjusts the resistance to the user at particular points during an exercise, including by way of "Chain," "Eccentric," and "Spotter" modes.







24. The Infringing Product (on the left side below) also copies Tonal's innovative handle connector (on the right side below), allowing the Infringing Product to connect a virtually identical array of accessories.











25. Despite all that Speediance copied and despite trading on Tonal's name by advertising their product as "the Tonal Killer," its Gym Monster product is inferior in many other respects. As such one example, the device presents a high risk of injury to its users (that

Tonal's home gym does not) because it contains a heavy, undampened platform that falls rapidly to the ground when released.[3]

26. Speediance has known of the Asserted Patents and its infringement at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the Asserted Patents and its infringement.

27. Speediance takes active steps with the intent of causing its customers and users to infringe the Asserted Patents by encouraging them to use the infringing Speediance Gym Monster. Such steps by Speediance include advising and directing customers and users to use the Speediance Gym Monster in an infringing manner by distributing instructions on its website, on Amazon, and in its user manuals regarding the use and features of the Speediance Gym Monster.

**THE ASSERTED PATENTS**

28. Speediance is infringing and will infringe the Asserted Patents by its manufacture, use, offer for sale, sale, and/or importation into the United States of the Infringing Product and by actively encouraging and instructing, and continuing to actively encourage and instruct, Speediance's customers and users to use the Infringing Product.

29. The '112 Patent is titled "Digital Strength Training," was filed on July 20, 2017, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on May 26, 2020. Tonal is the sole legal owner of the '112 Patent.

[3] https://youtu.be/7iScJKMFJ5A?si=UEbLKZXGS1DwJkXm&t=144

30. The ’434 Patent is titled “Method and Apparatus for Facilitating Strength Training,” was filed on May 19, 2011, and was duly and legally issued by the USPTO on October 16, 2012. Tonal is the sole legal owner of the ’434 Patent.

31. The ’258 Patent is titled “Exercise Machine Connector,” was filed on March 29, 2019, and was duly and legally issued by the USPTO on March 30, 2021. Tonal is the sole legal owner of the ’258 Patent.

32. The ’287 Patent is titled “Exercise Machine Connector,” was filed on February 11, 2021, and was duly and legally issued by the USPTO on January 17, 2023. Tonal is the sole legal owner of the ’287 Patent.

33. The ’687 Patent is titled “Digital Strength Training,” was filed on February 18, 2021, and was duly and legally issued by the USPTO on July 19, 2022. Tonal is the sole legal owner of the ’687 Patent.

34. The ’791 Patent is titled “Systems and Methods for Optimizing Muscle Development,” was filed on November 26, 2014, and was duly and legally issued by the USPTO on August 11, 2015. Tonal is the sole legal owner of the ’791 Patent.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 10,661,112**

35. Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

36. Speediance has and continues to directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the ’112 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

37. Speediance has known of the ’112 Patent and its infringement at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the ’112 Patent and its infringement.

38. Additionally, Speediance actively induces and will continue to actively induce infringement of one or more claims of the ’112 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Speediance’s customers and users to use the Infringing Product that infringes the claims.

39. The Infringing Product infringes the ’112 Patent. For example, the Infringing Product meets each limitation of at least claim 1 of the ’112 Patent.

40. To the extent the preamble is limiting, the Infringing Product comprises “[a]n exercise machine.” ’112 Patent, claim 1.

41. The Speediance Gym Monster is an exercise machine. Speediance advertises the Gym Monster as an “All-in-One Smart Home Gym”[4]:

[4] https://www.speediance.com/pages/equipment?spm=..page_1842389.header_1.1&spm_prev=..page_1843253.header_1.1https://www.speediance.com/pages/equipment?spm=..page_1842389.header_1.1&spm_prev=..page_1843253.header_1.1




42. The Infringing Product includes "an actuator." '112 Patent, claim 1.

43. The Infringing Product includes various types of actuators that the user can use to move the cables and perform an exercise. These actuators include, for example, handles, a barbell, a tricep rope, and ankle straps[5]:

[5] https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.split_slideshow_5.1&spm_prev=..page_1842389.header_1.1




44. The Infringing Product includes "a motor, wherein the motor is of pancake style and the machine is of low relative depth." '112 Patent, claim 1.

45. The Infringing Product is of low relative depth. In particular, the Infringing Product was designed to have a slim profile in order to minimize the amount of space required to use the machine while exercising and store it while not in use[6]:

[6] https://www.youtube.com/watch?v=7iScJKMFJ5A


SPEEDIANCE
GYM MONSTER

46. To achieve this slim profile, the Infringing Product utilizes two compact, pancake style motors that are higher in diameter and lower in depth[7]:




47. The Infringing Product includes "a cable coupled between the actuator and the motor." '112 Patent, claim 1.

48. The Infringing Product includes a cable that is coupled to the actuator on one end of the cable and coupled to the motor on the other end of the cable[8]:

[7] https://www.youtube.com/watch?v=zMHupqWe9bQ
[8] *Id.*







49. The Infringing Product includes "a motor controller coupled to the motor." '112 Patent, claim 1.

50. The motors of the Infringing Product are part of a "digital weight system" that utilizes an "electric engine" and digital controls to permit adjustment of resistance to the cables in 1 lb. increments. The digital controls are effectuated through one or more controller circuits, which are coupled to and control the motors[9]:




51. The Infringing Product includes "a filter coupled to the motor controller." '112 Patent, claim 1.

52. As described above, the Infringing Product incorporates a "digital weight system" that permits a user to adjust the resistance applied to the cables from the motors. The

[9] *Id.*

resistance is applied by way of a filter, *i.e.*, a combination of hardware and software containing a set of equations that instructs the controller circuit on how to drive the motor to achieve the desired resistance. For example, the Infringing Product contains a tablet that allows a user to select from various modes of resistance, including "standard," "chain," "eccentric," and "constant"[10]:




53. When a particular mode is selected, a filter coupled to the controller circuit instructs the controller circuit to adjust the voltage, current, torque, speed, and/or other properties of the motor in order to achieve the desired resistance type.

54. The Infringing Product includes a filter configured to "receive an information related to the position of the actuator." '112 Patent, claim 1.

[10] https://www.speediance.com/pages/smart-fitness?spm=..page_1959195.header_1.1&spm_prev=..page_1842389.header_1.1; https://www.youtube.com/watch?v=UTl9tgaW4Mw

55. The filter within the Infringing Product receives information related to the position of the actuator. For example, the filter receives information related to the position of the actuator to determine the user's range of motion and position within the exercise, so as to determine whether to alter or eliminate resistance at various points in the exercise.[11]




56. The Infringing Product includes a filter configured to "provide an input to the motor controller to adjust torque on the motor such that a strength curve is implemented relative to the position of the actuator." '112 Patent, claim 1.

[11] https://www.youtube.com/watch?v=UTl9tgaW4Mw

57. Upon information and belief, the filter within the Infringing Product provides input to the motor controller to adjust torque on the motor when, for example, the user chooses a type of resistance mode. If, for example, the user switches from "standard" resistance mode to "chains" mode, then the filter communicates that to the motor controller so the torque can be adjusted accordingly. The different resistance modes available to the user of the Infringing Product provide different strength curves. The resistance provided to the user in these different modes is dependent on the relative position of the actuator. For example, the "chains" mode will "progressively add[] weight as [the user] approach[es] the top of the motion."[12] Thus, in the Infringing Product, when a user chooses a resistance mode, the filter provides that input to the motor controller so the torque can be adjusted to implement the appropriate strength curve depending on the chosen resistance mode and position of the actuator(s).

58. The input to the motor controller from the filter in the Infringing Product includes "compar[ing] a current relative position between the motor and the actuator." '112 Patent, claim 1.

59. The Infringing Product allows for a comparison of the current relative position between the motor and the actuator by, for example, providing a range of motion graph.[13] Upon information and belief, the range of motion graph is flat at zero when the position between the motor and actuator(s) is the shortest it can be. The range of motion graph is at an apex when the motor and actuator(s) are furthest from each other, relative to the ongoing

---

[12] https://www.speediance.com/pages/smart-fitness?spm=..page_1959195.header_1.1&spm_prev=..page_1842389.header_1.1

[13] *Id.*

exercise. To create this range of motion graph, the Infringing Product compares, throughout the exercise, the current relative position between the motor and actuator(s).

60. The input to the motor controller from the filter in the Infringing Product includes "send[ing] an appropriate number of pulses to the motor to adjust a position of the motor based on the current relative position between the motor and the actuator." '112 Patent, claim 1.

61. The filter of the Infringing Product instructs the controller circuit to send an appropriate number of pulses to the motor to adjust position depending on the resistance mode and the current relative position between the motor and the actuator(s). The motors used in the Infringing Product are permanent magnet synchronous motors ("PMSM").[14] The type of PMSM used in the Infringing Product functions by way of electric pulses that command the motor to adjust position. Thus, in order to generate the appropriate resistance, the filter of the Infringing Product sends pulses to the motor to control the motor's position based on the properties of the selected resistance mode and the current relative position of the actuator(s) to the motor.

62. Speediance's infringement of the '112 patent has been willful and deliberate, at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the '112 patent and its infringement.

63. As a result of Speediance's infringement of the '112 patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

---

[14] https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.large_image_text_1.1&spm_prev=..page_1870509.header_1.1

64. Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Speediance with actual notice of Tonal's claim that Speediance infringes the '112 Patent.

65. As a result of Speediance's infringement of the '112 patent, Tonal has suffered and will continue to suffer irreparable harm unless Speediance is enjoined against such acts by this Court.

66. As a result of Speediance's willful infringement of the '112 patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

**COUNT TWO**
**INFRINGEMENT OF U.S. PATENT NO. 8,287,434**

67. Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

68. Speediance has and continues to directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the '434 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

69. Speediance has known of the '434 patent and its infringement at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the '434 patent and its infringement.

70. Additionally, Speediance actively induces and will continue to actively induce infringement of one or more claims of the '434 patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Speediance's customers and users to use the Infringing Product that infringes the claims.

71. The Infringing Product infringes the ’434 Patent. For example, the Infringing Product meets each limitation of at least claim 1 of the ’434 Patent.

72. To the extent the preamble is limiting, the Infringing Product allows for “[a] method of facilitating strength training exercise by a person using a video gaming system.” ’434 Patent, claim 1.

73. The Infringing Product includes a tablet that a user can operate to facilitate a strength training exercise or workout[15]:




[15] https://www.youtube.com/watch?v=UTl9tgaW4Mw

74. The Infringing Product includes a processor of the video gaming system that "communicate[s] a first information with an exercise device, the first information indicative of a resistance force during said strength training exercise." '434 Patent, claim 1.

75. The tablet of the Infringing Product contains a processor.[16] Using the tablet, a user can view and participate in a strength training exercise[17]:




[16] https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.large_image_text_1.1&spm_prev=..page_1870509.header_1.1
[17] https://www.youtube.com/watch?v=UTl9tgaW4Mw

76. The resistance force applied to the cables during the strength training exercise may be manually controlled by the user or set for the user based on the user's strength assessment.[18] The processor of the tablet communicates the appropriate resistance information to the exercise machine, and in particular to the motors of the exercise machine, which provide the resistance to the cables.

77. The Infringing Product includes a processor of the video gaming system that "monitor[s] progress of said strength training exercise." '434 Patent, claim 1.

78. The tablet within the Infringing Product monitors the user's progress by, for example, tracking his or her repetition count, resistance, and range of motion throughout the chosen strength training exercise[19]:

[18] https://www.speediance.com/pages/faq
[19] https://www.youtube.com/watch?v=LXhSYcBoJoE




79. The Infringing Product includes a processor of the video gaming system that "suppl[ies] information for a video or an audio signal indicative of the exercise progress." '434 Patent, claim 1.

80. The Infringing Product's tablet supplies information for a video and audio signal indicating the user's exercise progress. For example, the tablet provides "a counting sound" which "indicat[es] the count of each rep."[20] The tablet also provides a visual image of the total repetitions completed over the total repetitions in the exercise set.[21]

81. The Infringing Product allows for "[] said resistance force can be adjusted, so there is a first magnitude of the resistance force associated with a position during exercise movement, and a second magnitude of the resistance force associated with substantially the same position, the first magnitude substantially different from the second magnitude." '434 Patent, claim 1.

82. The Infringing Product allows for the resistance force to be adjusted so that there can be two substantially different resistance force magnitudes in substantially the same position during a particular exercise movement. For example, the exercise program (or the user of the exercise program) can adjust the resistance for the same exercise between different sets or repetitions so that that magnitude of resistance is different for the second set or repetition than the first set or repetition. As another example, the Infringing Product allows a user to set the resistance to "Eccentric Mode," which "increase[es] resistance as [the user] return[s] to [his or her] starting position."[22] Through the Infringing Product's Eccentric Mode, a user can experience a first resistance at one position of the movement (for example, at the start of the exercise repetition's concentric phase) that is substantially different in

[20] https://www.speediance.com/pages/faq?spm=..product_62def12d-232a-4613-a08c-4d14a73e7035.footer_1.1&spm_prev=..page_1842389.footer_1.1
[21] https://www.youtube.com/watch?v=LXhSYcBoJoE
[22] https://www.speediance.com/pages/smart-fitness?spm=..page_1959195.header_1.1&spm_prev=..page_1842389.header_1.1

magnitude than a second resistance at the same position of the movement (for example, at the end of the exercise repetition's eccentric phase).

83. Speediance's infringement of the '434 Patent has been willful and deliberate, at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the '434 Patent and its infringement.

84. As a result of Speediance's infringement of the '434 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

85. Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Speediance with actual notice of Tonal's claim that Speediance infringes the '434 Patent.

86. As a result of Speediance's infringement of the '434 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Speediance is enjoined against such acts by this Court.

87. As a result of Speediance's willful infringement of the '434 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## COUNT THREE
## INFRINGEMENT OF U.S. PATENT NO. 10,960,258

88. Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

89. Speediance has and continues to directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the '258 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

90. Speediance has known of the ’258 Patent and its infringement at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the ’258 Patent and its infringement.

91. Additionally, Speediance actively induces and will continue to actively induce infringement of one or more claims of the ’258 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Speediance’s customers and users to use the Infringing Product that infringes the claims.

92. The Infringing Product infringes the ’258 Patent. For example, the Infringing Product meets each limitation of at least claim 1 of the ’258 Patent.

93. To the extent the preamble is limiting, the Infringing Product includes “[a]n exercise machine connector.” ’258 Patent, claim 1.

94. The Infringing Product is an exercise machine that includes a connector that attaches accessories to the cables of the machine. The accessories include, for example, handles, an adjustable barbell, a tricep rope, and ankle straps. “The connector is compatible with all accessories”[23]:

[23] Speediance Manual, p. 6 (available at https://manuals.plus/speediance/s1-personal-all-in-one-home-gym-monster-manual#axzz8DF8Cj7XB); https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.large_image_text_1.1&spm_prev=..index.header_1.1




95. The connector of the Infringing Product includes "a cable connection base adapted to attach to an end of a cable." '258 Patent, claim 1.

96. The connector has a circular cable connection base made to attach to the end of a cable[24]:

[24] https://www.youtube.com/watch?v=LXhSYcBoJoE; https://www.youtube.com/watch?v=Qpp4hXbUQ10




97. The connector of the Infringing Product includes "a chamber adapted to receive a key through an opening of the chamber." '258 Patent, claim 1.

98. The connector includes a chamber on one end that is open and adapted to receive a key that can support different types of attachments, such as handles[25]:

[25] https://www.youtube.com/watch?v=Qpp4hXbUQ10&t=417s



99. The connector of the Infringing Product includes "a biasing mechanism within the chamber." '258 Patent, claim 1.

100. The chamber of the connector contains a biasing mechanism that keeps the key locked in. This biasing mechanism can be controlled to move up or down using a button on the connector base[26]:

[26] *Id*.



101. The connector of the Infringing Product includes "a receiving groove within the chamber wherein the biasing mechanism biases the key against the receiving groove so that the key is securely fixed within the chamber and wherein the key includes a slit through which a strap can be attached." '258 Patent, claim 1.

102. The connector's chamber, as referenced above, includes a receiving groove into which the key is inserted when the button on the connector base is held down. When the key is inserted, the biasing mechanism holds the key against the long, horizontal opening within the chamber to keep it in place[27]:

[27] *Id.*



103. The key included with the Infringing Product includes a slit through which a strap can be attached[28]:

[28] https://www.youtube.com/watch?v=Qpp4hXbUQ10; https://www.speediance.com/pages/equipment?spm=..product_62def12d-232a-4613-a08c-4d14a73e7035.header_1.1&spm_prev=..page_1842389.split_slideshow_5.1



104. Speediance's infringement of the '258 Patent has been willful and deliberate, at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the '258 Patent and its infringement.

105. As a result of Speediance's infringement of the '258 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

106. Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Speediance with actual notice of Tonal's claim that Speediance infringes the '258 Patent.

107. As a result of Speediance's infringement of the '258 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Speediance is enjoined against such acts by this Court.

108. As a result of Speediance's willful infringement of the '258 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

**COUNT FOUR**
**INFRINGEMENT OF U.S. PATENT NO. 11,554,287**

109. Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

110. Speediance has and continues to directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the ’287 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

111. Speediance has known of the ’287 Patent and its infringement at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the ’287 Patent and its infringement.

112. Additionally, Speediance actively induces and will continue to actively induce infringement of one or more claims of the ’287 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Speediance’s customers and users to use the Infringing Product that infringes the claims.

113. The Infringing Product infringes the ’287 Patent. For example, the Infringing Product meets each limitation of at least claim 1 of the ’287 Patent.

114. To the extent the preamble is limiting, the Infringing Product includes “[a]n exercise machine connector.” ’287 Patent, claim 1.

115. The Infringing Product is an exercise machine that includes a connector that attaches accessories to the cables of the machine. The accessories include, for example,

handles, an adjustable barbell, a tricep rope, and ankle straps. "The connector is compatible with all accessories"[29]:




116. The Infringing Product includes "a cable connection base adapted to attach to an end of a cable." '287 Patent, claim 1.

117. The connector has a circular cable connection base made to attach to the end of a cable[30]:

[29] Speediance Manual, p. 6 (available at https://manuals.plus/speediance/s1-personal-all-in-one-home-gym-monster-manual#axzz8DF8Cj7XB); https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.large_image_text_1.1&spm_prev=..index.header_1.1

[30] https://www.youtube.com/watch?v=LXhSYcBoJoE; https://www.youtube.com/watch?v=Qpp4hXbUQ10




118. The connector of the Infringing Product includes "a chamber that resides within a body of the cable connection base and adapted to receive a key through an opening of the chamber, wherein the key includes an eyelet through which a fastener can be attached." '287 Patent, claim 1.

119. The connector includes a chamber located within the body of the circular cable connection base and is open and adapted to receive a key through that opening[31]:

[31] https://www.youtube.com/watch?v=Qpp4hXbUQ10&t=417s



120. The key included with the Infringing Product includes a hole (an eyelet) through which a fastener can be attached:[32]

[32] https://www.youtube.com/watch?v=Qpp4hXbUQ10; https://www.speediance.com/pages/equipment?spm=..product_62def12d-232a-4613-a08c-4d14a73e7035.header_1.1&spm_prev=..page_1842389.split_slideshow_5.1



121. The connector of the Infringing Product includes "a biasing mechanism within the chamber." '287 Patent, claim 1.

122. The chamber of the connector contains a biasing mechanism that keeps the key locked in. This biasing mechanism can be controlled to move up or down using a button on the connector base[33]:

[33] https://www.youtube.com/watch?v=Qpp4hXbUQ10&t=417s



123. The connector of the Infringing Product includes "a receiving groove within the chamber wherein the biasing mechanism biases the key against the receiving groove so that the key is securely fixed within the chamber." '287 Patent, claim 1.

124. The connector's chamber, as referenced above, includes a receiving groove into which the key is inserted when the button on the connector base is held down. When the key is inserted, the biasing mechanism holds the key against the long, horizontal opening within the chamber to keep it in place[34]:

[34] *Id.*



125. Speediance's infringement of the '287 Patent has been willful and deliberate, at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the '287 Patent and its infringement.

126. As a result of Speediance's infringement of the '287 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

127. Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Speediance with actual notice of Tonal's claim that Speediance infringes the '287 Patent.

128. As a result of Speediance's infringement of the '287 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Speediance is enjoined against such acts by this Court.

129. As a result of Speediance's willful infringement of the '287 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

**COUNT FIVE**
**INFRINGEMENT OF U.S. PATENT NO. 11,389,687**

130. Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

131. Speediance has and continues to directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the '687 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

132. Speediance has known of the '687 Patent and its infringement at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the '687 Patent and its infringement.

133. Additionally, Speediance actively induces and will continue to actively induce infringement of one or more claims of the '687 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Speediance's customers and users to use the Infringing Product that infringes the claims.

134. The Infringing Product infringes the '687 Patent. For example, the Infringing Product meets each limitation of at least claim 1 of the '687 Patent.

135. To the extent the preamble is limiting, the Infringing Product comprises "[a]n exercise machine." '687 Patent, claim 1.

136. The Speediance Gym Monster is an exercise machine. Speediance advertises the Gym Monster as an "All-in-One Smart Home Gym"[35]:




137. The Infringing Product includes "an actuator." '687 Patent, claim 1.

138. The Infringing Product includes various types of actuators that the user can use to move the cables and perform an exercise. These actuators include, for example, handles, a barbell, a tricep rope, and ankle straps[36]:

[35] https://www.speediance.com/pages/equipment?spm=..page_1842389.header_1.1&spm_prev=..page_1843253.header_1.1

[36] https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.split_slideshow_5.1&spm_prev=..page_1842389.header_1.1




139. The Infringing Product includes "a motor." '687 Patent, claim 1.

140. The Infringing Product includes two motors that provide resistance to the cables of the machine[37]:

[37] https://www.youtube.com/watch?v=zMHupqWe9bQ




141. The Infringing Product includes "a cable coupled between the actuator and the motor." '687 Patent, claim 1.

142. The Infringing Product includes a cable that is coupled to the actuator on one end of the cable and coupled to the motor on the other end of the cable[38]:

[38] *Id.*







143. The Infringing Product includes "a processor." '687 Patent, claim 1.

144. The tablet on the Infringing Product contains a processor[39]:




145. The Infringing Product includes a processor configured to "determine that a range of motion of a user of the exercise machine is between pre-determined motion thresholds." '687 Patent, claim 1.

146. Using the tablet, the user can select different versions of what Speediance calls the "Spotter" mode[40]:

[39] https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.large_image_text_1.1&spm_prev=..page_1870509.header_1.1; https://www.youtube.com/watch?v=UTl9tgaW4Mw

[40] https://www.youtube.com/watch?v=Qpp4hXbUQ10&t=417s




147. When the machine is in "Spotter" mode, the processor will instruct the motor to decrease the resistance provided to the cables when the user takes too long to complete the repetition[41]:

[41] *Id.*




148. In the first version, labeled "Notch 1," the "Spotter" mode will only activate when the machine determines that the user is between the bottom and top of their range of motion thresholds[42]:

[42] https://www.youtube.com/watch?v=VPNRplVLgds&t=785s, 12:47-13:20




149. The tablet of the Infringing Product displays the range of motion thresholds, and the user's position between them, on its range of motion graph:




150. The Infringing Product includes a processor configured to "while the range of motion of the user is between the pre-determined motion thresholds, determine persistence, for at least a pre-determined period of time, of both: (1) a velocity of the cable being below a pre-determined velocity threshold; and (2) a tension applied by the user on the cable being above a pre-determined tension threshold." '687 Patent, claim 1.

151. The Infringing Product's Spotter mode will only activate when the user is providing force to the cable but unable to move the cable at a high enough velocity, or at all. For the Notch 1 mode in particular, the spotter will only activate while the range of motion of the user is in between the user's bottom and top ranges of motion[43]:

[43] https://www.youtube.com/watch?v=VPNRplVLgds&t=785s, 12:47-13:20




152. The spotter mode is only activated when the user persists in this low-velocity, high-tension movement for a period of time.

153. The Infringing Product includes a processor configured to "in response to determining persistence, for at least the pre-determined period of time, of both: (1) the velocity of the cable being below the pre-determined velocity threshold; and (2) the tension applied by the user on the cable being above the pre-determined tension threshold, determine that the user should be spotted, wherein torque of the motor is reduced based at least in part on determining that the user should be spotted." '687 Patent, claim 1.

154. As shown in the figure above, when the Infringing Product's spotter mode detects that the cable has been at too low of a velocity while the user is still providing significant tension, the spotter mode will activate. When the spotter mode activates, the torque provided to the motor will decrease, providing less weight to the user and allowing them to complete the movement easier.

155. Speediance's infringement of the '687 Patent has been willful and deliberate, at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the '687 Patent and its infringement.

156. As a result of Speediance's infringement of the '687 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

157. Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Speediance with actual notice of Tonal's claim that Speediance infringes the '687 Patent.

158. As a result of Speediance's infringement of the '687 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Speediance is enjoined against such acts by this Court.

159. As a result of Speediance's willful infringement of the '687 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

**COUNT SIX**
**INFRINGEMENT OF U.S. PATENT NO. 9,101,791**

160. Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

161. Speediance has and continues to directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the '791

Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

162. Speediance has known of the ’791 Patent and its infringement at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the ’791 Patent and its infringement.

163. Additionally, Speediance actively induces and will continue to actively induce infringement of one or more claims of the ’791 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Speediance’s customers and users to use the Infringing Product that infringes the claims.

164. The Infringing Product infringes the ’791 Patent. For example, the Infringing Product meets each limitation of at least claim 1 of the ’791 Patent.

165. To the extent the preamble is limiting, the Infringing Product allows for “[a] method of using an exercise device.” ’791 Patent, claim 1.

166. The Infringing Product is an exercise machine that a user can use. Speediance advertises the Gym Monster as an “All-in-One Smart Home Gym”[44]:

[44] https://www.speediance.com/pages/equipment?spm=..page_1842389.header_1.1&spm_prev=..page_1843253.header_1.1




167. The Infringing Product allows for "identifying, by a processing device, one or more parameters of a user." '791 Patent, claim 1.

168. The Infringing Product includes a tablet that has a processor and memory.[45] The tablet of the Infringing Product identifies multiple parameters of a user such as the user's height, weight, the user's fitness goal, etc.:

[45] https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.large_image_text_1.1&spm_prev=..page_1870509.header_1.1







169. The Infringing Product allows for "identifying, by the processing device, force data associated with the user, the force data corresponding to a force measured while the user performed an exercise." '791 Patent, claim 1.

170. When the user completes the strength assessment available on the Infringing Product's tablet, the tablet provides the maximum weight that the user was able to complete for at least one rep of that particular exercise[46]:




171. Furthermore, the tablet tracks the weight on each handle for each rep the user completes of each exercise:

---

[46] https://www.youtube.com/shorts/NWgT2qYe7FQ




172. The Infringing Product allows for "generating, by the processing device, an exercise program to be executed using the exercise device." '791 Patent, claim 1.

173. The tablet of the Infringing Product generates exercise programs that a user can participate in while using the exercise device:




174. The Infringing Product allows for "computing, by the processing device, a resistance to be applied by the exercise device during execution of the exercise program, wherein computing the resistance comprises multiplying the force by a fractional multiplier selected based on the one or more parameters of the user." '791 Patent, claim 1.

175. When the tablet on the Infringing Product generates an exercise program, it provides a recommended resistance to be applied throughout the exercises:




176. Upon information and belief, the tablet computes the recommended resistance by multiplying the force data measured during the user's strength assessment with a fractional multiplier selected based on the one or more parameters of the user.[47]

[47] https://www.speediance.com/pages/faq

**Can Speediance determine weight for user based on his/her personal strength score?**

Yes, after you complete the strength assessment, Speediance can automatically set the appropriate weight for each movement.

177. Speediance's infringement of the '791 Patent has been willful and deliberate, at least as of November 7, 2023, when Tonal had delivered to Speediance a letter notifying it of the '791 Patent and its infringement.

178. As a result of Speediance's infringement of the '791 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

179. Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Speediance with actual notice of Tonal's claim that Speediance infringes the '791 Patent.

180. As a result of Speediance's infringement of the '791 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Speediance is enjoined against such actsby this Court.

181. As a result of Speediance's willful infringement of the '791 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## COUNT SEVEN
## FALSE AND MISLEADING ADVERTISING – 15 U.S.C. § 1125(A)

182. Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

183. Defendant sells its Infringing Product on Amazon. As of November 7, 2023, the Infringing Product had 25 reviews on Amazon. Of the 25 ratings for the Infringing Product, 23 were five stars. The Infringing Product's average rating was 4.7 out of 5 stars.

184. However, upon information and belief, some or all of the reviews on Amazon are fake reviews posted by persons other than genuine, arms-length purchasers of Speediance Gym Monster devices. Fakespot is an AI-powered website that analyzes reviews, product info, and other aggregate data to identify and report on fake and unreliable eCommerce activity, including activity on Amazon. Fakespot's mission is to empower customers to avoid eCommerce scams and to protect them from deception by providing transparency. As shown by FakeSpot, its "engine [] profiled the reviewer patters and has determined that there is **high deception** involved."[48] (emphasis in original). Fakespot gave the Amazon reviews for the Infringing Product an "F," the lowest reliability grade possible on the site. In fact, Fakespot determined that there are "[i]insufficient reliable reviews" on the page.[49] This is evident by the fact that the Infringing Product has an abnormal number of 5-star reviews, the highest rating available on Amazon. Moreover, ReviewMeta, another Amazon review checker, gave the Infringing Product a rating of "Warn"—the second lowest reliability grade on the site.[50] For the category of "suspicious reviewers," ReviewMeta gave the Infringing Product a "Fail" rating. A large percentage of the reviewers are one-time reviewers or have deleted their reviews for another product.[51] ReviewMeta also found "an excessively large percentage" of

[48] https://www.fakespot.com/product/speediance-all-in-one-smart-home-gym-smart-fitness-trainer-equipment-total-body-resistance-training-machine-strength-training-machine-bbfbbc76-c4e8-4f89-b944-8363768c3d32

[49] *Id.*

[50] https://reviewmeta.com/amazon/B0C4KF7844

[51] *Id.*

the reviews "use[d] substantial repetitive phrases between them … which may indicate unnatural reviews."[52]

185. Defendant's false advertising exploits Amazon's search algorithm by both falsely inflating the reviews of Defendant's listings, and wrongfully increasing Defendant's sales. On information and belief, Amazon's search ranking algorithm rewards sellers for both high reviews and high sales. By falsely inflating its own reviews and thereby illegally increasing its sales, Defendant is able to create a self-reinforcing cycle of wrongful gains—all at the expense of innocent consumers and honest competitors like Plaintiff.

186. Defendant also sells the Infringing Product on its own website. Its website reviews suffer from the same false and misleading nature as the Amazon reviews of the Infringing Product. On its website, the Infringing Product has 133 reviews as of October 13, 2023, with 100% of them being 5-star reviews. On its own, this ratio of reviews to ratings is not credible. What makes it even more clear that the Defendant has either fabricated reviews, deleted reviews, and/or altered them, is the fact that negative reviews also have a 5-star rating, as evidenced below[53]:

L **Ling Zhang** USA

I am extremely disappointed with the service - I placed my order in early December and waited a month without any update. I emailed the after sale team and they said it was delayed by the Covid spike in China and my equipment should be sent in January. I waited another few weeks but still no updates. Emailed again and they say it's expected in mid Feb. now it's the end of Feb and I never headed back despite a few emails. I requested a refund and no one is handling it. I don't even know if I will be able to get my money back!

2/20/2023 Was this review helpful? 5

187. Furthermore, there are reviews from different users that are identical[54]:

---

[52] *Id.*

[53] https://www.speediance.com/products/speediance-home-gym?spm=..page_1842389.large_image_text_1.1&spm_prev=..index.header_1.1

[54] *Id.*

Reviews(100) With Photos(80) Sort by: Most Recent

a ak***nds
★★★★★
USA

Finally getting to share my experience with the Speediance Gym Monster. I did a ton of research after visiting with a friend who raved about his Tonal. Three things convinced me to go with the Speediance machine instead. First, it was overall cost. Tonal is not only initially several thousand but they recently increased their monthly subscription cost to $60. Hard pass. Second, I love that the Gym Monster is standalone and easily moveable. I didn't have to commit to a specific spot and drill into my walls. I appreciate being able to put it in spot A in my home gym and change my mind a month later in favor of spot B. Lastly, lower body exercises. They're my favorite and I do leg day 2-3 times per week so a machine that could offer movements like hip thrusts and leg extensions is important to me. I've been using it for a couple weeks now and I'm in love with it. Still waiting on the adjustable bench but the absence of it isn't prohibitive for me. Every time I use it, I enjoy it more and find it tough to walk out of my gym most days. The new template updates were such a fantastic addition! I was able to build my current workout plan into the machine and even create supersets and special movement combinations to fit how I like to workout. I have found that the resistance feels heavier than it says it is but I'm not mad. I'll just work harder. Yesterday, I was short on time and couldn't do one of my pre built templates so I opted for one of their 27 minute leg workouts. It was Epic Glutes 2. The weights were all set pretty low but as you all know, it's adjustable so I increased the weight and hot damn, that workout kicked my ass! Then it ended with my favorite hip/glute stretch. I was smiling and sweaty walking out of my gym after that. If you're on the fence, I 100% encourage you to go for it. It's versatile, fun, comprehensive, customizable, easy to use, and comes with great customer service. Whitney Cooper had been super helpful, patient, and kind. Despite the shipping issues many people have experienced, it's a great machine and worth the wait. I've added a few photos from unboxing day and where it current lives in my gym. I hope this review was helpful. I'm happy to answer any questions if anyone has any.



T Ta***do
★★★★★
USA

Finally getting to share my experience with the Speediance Gym Monster. I did a ton of research after visiting with a friend who raved about his Tonal. Three things convinced me to go with the Speediance machine instead. First, it was overall cost. Tonal is not only initially several thousand but they recently increased their monthly subscription cost to $60. Hard pass. Second, I love that the Gym Monster is standalone and easily moveable. I didn't have to commit to a specific spot and drill into my walls. I appreciate being able to put it in spot A in my home gym and change my mind a month later in favor of spot B. Lastly, lower body exercises. They're my favorite and I do leg day 2-3 times per week so a machine that could offer movements like hip thrusts and leg extensions is important to me. I've been using it for a couple weeks now and I'm in love with it. Still waiting on the adjustable bench and ring but I've been using it without those accessories just fine. I'm looking forward to having them but the lack of them isn't prohibitive for me. Every time I use it, I enjoy it more and find it tough to walk out of my gym most days. The new template updates were such a fantastic addition! I was able to build my current workout plan into the machine and even create supersets and special movement combinations to fit how I like to workout. I have found that the resistance feels heavier than it says it is but I'm not mad. I'll just work harder. Yesterday, I was short on time and couldn't do one of my pre built templates so I opted for one of their 27 minute leg workouts. It was Epic Glutes 2. The weights were all set pretty low but as you all know, it's adjustable so I increased the weight and hot damn, that workout kicked my ass! Then it ended with my favorite hip/glute stretch. I was smiling and sweaty walking out of my gym after that. If you're on the fence, I 100% encourage you to go for it. It's versatile, fun, comprehensive, customizable, easy to use, and comes with great customer service. Whitney Cooper had been super helpful, patient, and kind. Despite the shipping issues, it's a great machine and worth the wait. I've added a few photos from unboxing day and where it current lives in my gym. I hope this review was helpful. I'm happy to answer any questions if anyone has any.






188. One explanation for positive reviews could be that Defendant provided the Infringing Product to reviewers in exchange for a review. But if this is done, the reviewer must state that they were provided the machine for free. None of the Amazon reviews, nor the website reviews, contain a disclaimer that the review was sponsored.

189. Upon information and belief, by placing false customer reviews on Amazon and Defendant's website, Defendant has caused literally false and misleading statements to appear in customer reviews of its product. The fake customer reviews placed by Defendant contain untrue statements of fact, including explicit or implicit statements that reviewers purchased Defendant's products when they did not, and/or false statements about the quality of Defendant's products.

190. Defendant's fake consumer reviews are a form of advertising. Upon information and belief, Defendant places fake consumer reviews on Amazon and its own website to make its products appear to be highly reviewed by consumers, and therefore attractive to other consumers.

191. Placing fake customer reviews of a product deceives a substantial portion of consumers shopping for that product or similar products. On information and belief, consumers who read reviews on Amazon or a product website, or view a listing's average customer review star rating, generally assume that the customer reviews on the Amazon listing or product's website are genuine and that they reflect the honest, unbiased opinions of actual purchasers of that product. But fake customer reviews are not genuine and do not reflect the honest, unbiased opinion of actual purchasers.

192. Customer reviews on Amazon and a product's website, and the average customer review star rating, are material to the purchasing decisions of consumers. Defendant's fake customer reviews deceive consumers into purchasing Defendant's products.

193. Defendant's falsely advertised product, the Infringing Product, listed for sale on Amazon and Defendant's own website, travels in interstate commerce.

194. Defendant's false advertising scheme is likely to harm, and continue to harm, Plaintiff. Customers use product reviews as a primary way to determine the quality of a product and whether it is worth purchasing. As a direct result of Defendant's use of fake consumer reviews on its Amazon Infringing Product listing, Plaintiff is likely to lose sales and customer goodwill because customers are likely to be deceived by the false positive reviews. Defendant's falsely inflated average customer reviews for its listings is also likely to harm Plaintiff's reputation by making Plaintiff's average customer reviews for the same products look poorer in comparison than they actually are.

## PRAYER FOR RELIEF

WHEREFORE, Tonal seeks relief against Speediance as follows:

a. A judgment that Speediance has been, and is currently, infringing the Asserted Patents;

b. A judgment that Speediance has engaged in false and misleading advertising;

c. An award to Tonal of monetary relief sufficient to compensate Tonal for damages resulting from Speediance's infringement of the Asserted Patents, including lost profits and/or a reasonable royalty under 35 U.S.C. § 284, and pre-judgment and post-judgment interest;

d. An award to Tonal of monetary relief sufficient to compensate Tonal for damages suffered as a proximate cause of Speediance's false and misleading advertisement;

e. An order enjoining Speediance, its officers, agents, servants, and employees, and those persons in active concert or participation with

any of them, from commercially manufacturing, using, making, offering for sale, selling, or importing the Infringing Product, or inducing others to infringe the Asserted Patents, prior to the expiration date of the Asserted Patents;

f. An order enjoining Speediance, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from engaging in false advertisement of its products, and further requiring Speediance to remove all of its product reviews on its website, inform Amazon of the false customer reviews, and cease selling its products on Amazon for a period sufficient to correct any gains in market share and/or goodwill attributable to the conduct on which Tonal's claims are based;

g. An award to Tonal of enhanced damages, up to and including trebling of the damages awarded to Tonal;

h. A finding that this case is exceptional pursuant to 35 U.S.C. § 285 and an award to Tonal of its attorneys' fees and costs; and

i. Any further necessary and proper relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff Tonal demands a trial by jury on all issues presented in this Complaint that are so triable.

Dated: May 1, 2026

MORRISON & FOERSTER LLP

By: */s/ Timothy C. Saulsbury*

Timothy C. Saulsbury (CA Bar No. 281434)
*Lead Counsel*
Joyce C. Li (*pro hac vice* forthcoming)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000

Sara Doudar (*pro hac vice* forthcoming)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA 92130
(858) 720-5100

*Attorneys for Plaintiff Tonal Systems, Inc.*